STATE of Tennessee, Appellee,

v.

Teri Melissa BINGHAM, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 14, 1995.

Permission to Appeal Denied by Supreme Court Oct. 2, 1995.

Herbert S. Moncier and Ann C. Short, Knoxville, for Appellant.

Charles W. Burson, Attorney General & Reporter, Merrilyn Feirman, Asst. Attorney General, Nashville, Al Schmutzer, Jr., District Attorney General, and Steven Hawkins, Asst. District Attorney General, Sevierville, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Teri Melissa Bingham, appeals from a sentence of four years confinement imposed by the Criminal Court of Sevier County. The appellant raises three issues on appeal. First, the appellant contends that the trial court improperly increased the appellant's sentence by applying inappropriate enhancement factors. Second, the appellant argues that the trial court should have sen-

tenced her as an especially mitigated offender. Finally, the appellant avers that the trial court should have imposed an alternative sentence.

After a review of the record, we modify the judgment of the trial court.

## I. *Facts*

The facts of this case reveal that what began as an evening of socializing among friends ultimately ended in a night of tragedy with loss of life to an innocent victim.

On March 14th, 1992, the appellant, Teri Melissa Bingham, accompanied by some friends, visited the Starlite Lounge in Knox County. Although under the legal drinking age, the appellant was observed on occasion drinking beer throughout the evening.[1] Around midnight, several of the appellant's friends left the lounge. However, the appellant and a female friend chose to remain. Around 2:30 a.m., the appellant's female friend departed, leaving the appellant with a male acquaintance who had agreed to see that she was driven home safely. This acquaintance had been delivered possession of the appellant's car keys. However, at some point after the appellant's female friend left, the acquaintance reneged on his promise to drive the appellant home and returned the keys to her. Shortly thereafter, the appellant left the lounge with the intent of driving to a friend's house in Sevier County via the Chapman Highway.

Shortly after 2:30 a.m., the appellant was first observed by Freddy Lawson, who was traveling south on Chapman Highway. The appellant, who was also traveling south, passed the Lawson vehicle while driving in a north-bound lane of the highway. In order to alert the appellant to the danger she posed, Lawson attempted to overtake the appellant's vehicle. Although at times reaching speeds of up to 100 miles per hour, Lawson was unable to catch the appellant.

Around 3:00 a.m., Ralph Gibson, a tow truck operator traveling north on Chapman Highway, also observed the appellant's vehicle traveling south in a north-bound lane. The appellant was operating the vehicle in a very reckless manner. She occupied, at different times, all four lanes of the highway. After passing her, Gibson turned around in an attempt to overtake and warn the appellant. Gibson also failed in his efforts. The appellant's vehicle collided head-on with another vehicle before he could reach her.

The vehicle that the appellant collided with was operated by Leonard Webb. At the time of the collision, Webb was driving in the outside north-bound lane of the four-lane highway. Mr. Webb died shortly after the collision as a result of massive head injuries. The appellant is permanently disabled as a result of the collision, and requires an orthopedic walker to be ambulatory.

At the time of this offense, the appellant was twenty years of age and gainfully employed, with no criminal history. The appellant resided with her parents and had an excellent reputation within the community where she worked and lived.

On February 2, 1993, the Sevier County Grand Jury indicted the appellant on one count of vehicular homicide by recklessness, one count of vehicular homicide by intoxication, and one count of driving under the influence. The appellant pled guilty to vehicular homicide by recklessness.

On August 2, 1993, the trial court held a sentencing hearing. At the conclusion of the hearing, the court sentenced the appellant to four years as a Range I offender. The trial court reserved ruling on the appellant's request for an alternative sentence until her attorney could procure additional information concerning her medical problems.

On December 9, 1993, the trial court denied the appellant's request for an alternative sentence and imposed a sentence of four years with the Tennessee Department of Correction.

## II. *Sentencing*

■ Appellate review of a sentence is *de novo*, with a presumption that the determina-

---

1. The degree of the appellant's intoxication was in dispute from witnesses at the lounge. A blood-alcohol sample was taken at the hospital. However, due to a blood transfusion, the test results were deemed inaccurate.

tions made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1990 Repl.). The appellant has the burden of establishing that the sentence imposed by the trial court was erroneous. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991); *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn.Crim.App.1991). In determining whether the appellant has carried this burden, this court must consider: (a) the evidence adduced at trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; and (f) the appellant's potential or lack of potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–103(5), –210(b) (1990 Repl.).

## A. *Enhancement and Mitigating Factors*

In making its sentencing decision, the trial court applied the following enhancement factors: "the defendant had no hesitation about committing a crime when the risk to human life was high," and "the crime was committed under circumstances under which the potential for bodily injury to a victim was great." Tenn.Code Ann. §§ 40–35–114(10), (16) (1994 Supp.). The appellant contends that the trial court improperly applied both enhancement factors to her sentence.

■ The Tennessee Criminal Sentencing Reform Act of 1989 (hereinafter the "Sentencing Act") provides that an enhancement factor may be applied to increase the defendant's sentence within the appropriate range if the factor is not an "essential element" of the offense. Tenn.Code Ann. § 40–35–114 (1994 Supp.). The test for determining if an enhancement factor is an essential element of an offense is whether the same proof necessary to establish the enhancement factor would also establish an element of the offense. *See State v. Jones*, 883 S.W.2d 597, 601 (Tenn.1994). The appellant argues that both enhancement factors (10) and (16) are essential elements of vehicular homicide by recklessness.

■ Vehicular homicide by recklessness is defined as the "reckless killing of another by the operation of an automobile ... as the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person." Tenn.Code Ann. § 39–13–213(a)(1) (1991 Repl.). An essential element of this offense thus requires proof that the appellant's conduct created a substantial risk of death or serious bodily injury to a victim. It is clear that the facts required to establish this element encompass the proof necessary to establish that "the potential for bodily injury to a victim was great." Enhancement factor (16) therefore may not be applied to a conviction for vehicular homicide by recklessness.

■ The question of the applicability of enhancement factor (10) is not so easily resolved. In *Jones*, our state supreme court held that the focus in determining the applicability of enhancement factor (10) should be whether "the risk to human life was high." *Id.* at 602. Little, if any, emphasis is to be placed on whether the defendant "hesitated" before committing the crime. *Id.* Therefore, following the rationale of *Jones*, where the proof necessary to establish an element of the offense would establish that the "risk to human life was high," the enhancement factor is an essential element of the offense and thus inapplicable. However, where a high risk to human life is established with facts separate from those necessary to establish an element of the offense, the enhancement factor is not an essential element of the offense and may be applied if supported by the facts. In a vehicular homicide by recklessness case, if the proof that establishes a "high risk to human life" can be separated from the proof necessary to establish that the defendant's conduct "created a substantial risk of death or serious bodily injury to *a person*," then enhancement factor (10) is not an essential element of the offense. Therefore, enhancement factor (10) may be applied where the defendant creates a high risk to the life of a person other than the victim, because the facts establishing the enhancement factor would be separate from the facts necessary to establish a high risk of death to *a person*. *Cf. State v. Lambert*, 741 S.W.2d 127, 134 (Tenn.Crim.App.1987) (application of enhancement factor (10) upheld in a vehicular homicide by intoxication case where, prior to striking the victims, the defendant recklessly drove through streets and sidewalks crowded

with people); *see also Jones,* 883 S.W.2d at 603 (expressing approval for the holding of *Lambert*). Conversely, if there is no risk to the life of a person other than the victim, clearly the proof necessary to establish enhancement factor (10) will be encompassed by the proof necessary to establish an essential element of vehicular homicide.

■ Thus, to determine whether enhancement factor (10) is an essential element of the offense committed by the appellant, we must determine whether there is proof in the record that the appellant created a high risk to the life of a person other than the victim. In making its sentencing determination, the trial court found that "[t]his defendant did cross all four lanes of traffic on a major thoroughfare in Sevier County, ... the most heavily traveled non-interstate highway in Sevier County. The possibility for death to many people was great." Although the appellant was driving very early in the morning, the record establishes that she encountered at least two other automobiles on the highway. With the presumption that the trial court's findings were correct, we conclude that the appellant created a high risk to the lives of at least three people other than the victim. Thus, enhancement factor (10) is not an essential element of the offense committed by the appellant, and its application is supported by the record.

■ With respect to mitigating factors, the trial court made the following statement:

> The Court finds that, as far as mitigation goes, that under the statute, this defendant has no history of criminal conduct. She has been a model citizen, at least by her lack of record.... Her age, of course, is certainly a factor. And she has shown great remorse, as the Court has stated. I feel like that should be considered.

We conclude that the trial court's mitigation findings were proper pursuant to Tenn.Code Ann. § 40–35–113(6) and (13).[2]

■ In summary, we conclude that one enhancement factor and two mitigating factors are present. When there are both enhancement and mitigating factors present, the sentencing court must start at the minimum sentence in the Range, enhance the sentence within the Range as appropriate for the enhancement factors, and then reduce the sentence within the Range, as appropriate, for the mitigating factors. Tenn.Code Ann. § 40–35–210(e) (1990 Repl.). Upon *de novo* review, we conclude that the presumptive minimum sentence of three years is appropriate.

### B. *Especially Mitigated Offender Status*

The appellant also argues that she should have been sentenced as an especially mitigated offender. Where the defendant has no prior felonies, and the trial court finds mitigating factors but no enhancement factors, the trial court may sentence the defendant as an especially mitigated offender. Tenn.Code Ann. § 40–35–109(a) (1990 Repl.). In this case, we have previously determined that the trial court properly applied enhancement factor (10) to the appellant's sentence. The trial court was therefore precluded by statute from sentencing the appellant as an especially mitigated offender.

### C. *Alternative Sentencing*

■ The appellant also contends that the trial court should have imposed an alternative sentence. The process for deciding whether a defendant should have been granted an alternative sentence necessarily begins with a determination of whether the defendant is entitled to the statutory presumption that she is a favorable candidate for alternative sentencing. *State v. Bonestel,* 871 S.W.2d 163, 167 (Tenn.Crim.App.1993).

In order for a defendant to be entitled to the statutory presumption of alternative sentencing, three requirements must be met. First, the defendant must be an especially mitigated or standard offender. Tenn.Code

---

2. Of the factors relied upon by the trial court as mitigation of the appellant's sentence, only one, her age, is an enumerated mitigating factor under Tenn.Code Ann. § 40–35–113 (1990 Repl.). However, Tenn.Code Ann. § 40–35–113(13) (1990 Repl.) allows the trial court to apply, in addition to the enumerated factors, "any other factor consistent with this chapter." We conclude that consideration of the appellant's remorse and lack of any criminal record whatsoever as mitigating factors is consistent with the purposes and principles of the Sentencing Act.

Ann. § 40–35–102(6) (1994 Supp.). Second, the defendant must be convicted of a Class C, D or E felony. *Id.* Finally, the defendant must not fall within the parameters of Tenn.Code Ann. § 40–35–102(5). This means that the defendant cannot have a criminal history evincing either "clear disregard for the laws and morals of society" or "failure of past efforts at rehabilitation." *Id.* The appellant is a first time offender of a class C felony. Thus, she is clearly entitled to the presumption.

Determining that the appellant is entitled to the statutory presumption does not, however, end the inquiry. The presumption may be rebutted by "evidence to the contrary." Tenn.Code Ann. § 40–35–102(6) (1994 Supp.). Guidance as to what constitutes evidence to the contrary may be found in the following sentencing considerations codified in Tenn. Code Ann. § 40–35–103:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Ashby,* 823 S.W.2d at 169 (Tenn.1991). In this case, the trial court specifically found that a sentence other than total confinement would depreciate the seriousness of the offense, and that confinement would provide an effective deterrence to others likely to commit similar offenses. Tenn.Code Ann. § 40–35–103(1)(B) (1990 Repl.).

■■■ In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement. *State v. Hartley,* 818

S.W.2d 370, 374–75 (Tenn.Crim.App.1991) (citations omitted). In this case, while the results were indeed tragic, we are unable to conclude that the circumstances of the offense meet the standards announced in *Hartley.* Moreover, there are several factors that favor alternative sentencing. For example, the appellant is a youthful offender with absolutely no criminal history. She is a high school graduate with an excellent work record. Additionally, she has shown great remorse for her crime, and has devoted a great deal of time telling her story to high school students in an effort to persuade them against driving recklessly or while under the influence of alcohol.

■■■ The State argues that an alternative sentence is not appropriate in this case because a death was involved. In several cases decided before the enactment of the Sentencing Act, this court held that probation should not be granted where a death was involved unless "exceptional circumstances" are present. *See, e.g., State v. Garren,* 644 S.W.2d 701, 703 (Tenn.Crim.App.1982); *Kilgore v. State,* 588 S.W.2d 567 (Tenn.Crim.App.1979). The State relies on these cases to support its argument. Under the provisions of the Sentencing Act, we are precluded from applying the principle of these cases when determining whether a defendant is entitled to an alternative sentence where the defendant is presumed to be a favorable candidate for alternative sentencing under Tenn.Code Ann. § 40–35–102(6). As this court pointed out in *Hartley,* "[o]nce the legislature has specifically authorized the use of sentencing alternatives to confinement for a particular offense, trial courts may not summarily impose a different standard by which probation is denied solely because of the defendant's guilt for that offense." 818 S.W.2d at 374 (citations omitted). The legislature has declared vehicular homicide, which necessarily includes a death, a class C felony. The legislature has also provided that certain defendants guilty of class C felonies are entitled to the presumption that they are suitable candidates for alternative sentencing. To apply a different standard solely because a death is involved "would fail to comply with the mandates of the 1989 [Sentencing] Act and would

condone inconsistency and unjustified disparity in sentencing unrelated to the purposes of the Act." *Id.*

Therefore, the existence of a death cannot by itself constitute sufficient "evidence to the contrary" under Tenn.Code Ann. § 40–35–102(6). The trial court's denial of an alternative sentence based on the seriousness of the offense under Tenn.Code Ann. § 40–35–103(1)(B) can only be upheld if there is evidence in the record that indicates that the circumstances of the offense, as committed, were especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense outweighs all factors favoring a sentence other than confinement. It is the State's responsibility to produce this evidence. We conclude that the State has failed to meet this burden.

The trial court also denied an alternative sentence based on deterrence. Before a trial court can deny alternative sentencing on the ground of deterrence, there must be some evidence contained in the record that the sentence imposed will have a deterrent effect within the jurisdiction. *Bonestel,* 871 S.W.2d at 169 (quoting *State v. Horne,* 612 S.W.2d 186, 187 (Tenn.Crim.App. 1980). We have repeatedly held that the finding that there will be a deterrent effect within the jurisdiction cannot be merely conclusory but must be supported by proof. *See Ashby,* 823 S.W.2d at 170. In this case, the State made the following statement during its opening argument at the sentencing hearing:

> The witnesses we would seek to call today, if the Court please, would be Trooper David McGill, who, if the Court please, is here in this courtroom. I asked him to gather some statistics last year for accidents—those people who died in traffic accidents here in Sevier County. If the Court please, the whole year last year in Sevier County, 28 people died in traffic accidents ... Up through September of last year, eight of those 28 were killed on Chapman Highway, and seven of those eight were killed in Seymour on Chapman Highway. So of all the folks that died last year as a result of traffic accidents, ap-

proximately 25% died within a four or five mile stretch of Chapman highway.

> I don't have to tell your honor how dangerous that stretch of highway is. One can always look at the paper and see the carnage that monthly appears on Chapman Highway, either through alcohol, or just recklessness. Many of these were recklessness, some of these were alcohol. But I did want to give the Court those statistics that Trooper David McGill gathered.

The appellant correctly points out that the State failed to call the trooper as a witness or enter any evidence into the record establishing these statistics.

It is a well established principle of law in Tennessee that the arguments of counsel are not substantive evidence. *See State v. Howell,* 868 S.W.2d 238, 257 (Tenn.1993). The argument of the prosecutor cannot be considered evidence of the need for deterrence within the jurisdiction. Therefore, deterrence cannot be the basis for a denial of an alternative sentence in this case.

It is clear from a review of the record that there is insufficient evidence to overcome the statutory presumption that the appellant is a favorable candidate for alternative sentencing. Thus, an alternative sentence must be imposed. The sole remaining question is which sentencing alternative is proper.

### D. *Probation*

The appellant contends that she should have been granted full probation. It should be pointed out that determining whether a defendant is entitled to an alternative sentence necessarily requires a separate inquiry from that of determining whether the defendant is entitled to full probation. This is so because the inquiries involve different burdens of proof. Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. Conversely, the defendant has the burden of establishing suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *See* Tenn.Code Ann.

§ 40–35–303(b) (1994 Supp.).[3] There is no bright line rule for determining when probation should be granted. To meet the burden of establishing suitability for full probation, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes,* 803 S.W.2d 250, 259 (Tenn.Crim.App.1990).

The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for probation: (1) "the nature and [circumstances] of the criminal conduct involved", Tenn.Code Ann. § 40–35–210(b)(4) (1990 Repl.); (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the defendant will commit another crime, Tenn.Code Ann. § 40–35–103(5) (1990 Repl.); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn.Code Ann. § 40–35–103(1)(B) (1990 Repl.); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40–35–103(1)(B) (1990 Repl.).

■ In arriving at the appropriate sentence, the sentencing court may not consider any factor which constitutes an element of the offense. *See State v. Travis,* 622 S.W.2d 529, 533–534 (Tenn.1981). Neither should the sentencing decision originate from a generalization about the type of crime committed. *Id.* Thus, in the case before us, the fact that a death occurred is not relevant to determining whether the appellant is entitled to full probation.

■ However, the facts and circumstances which surround the criminal act are appropriate considerations. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *State v. Fletcher,* 805 S.W.2d 785, 788–89 (Tenn.Crim.App.1991). The facts and circumstances of this case are

clearly aggravated. The record reveals a callous indifference by the appellant for the safety of unsuspecting motorists who were traveling Chapman Highway during the early morning hours of March 15, 1992. Although we have determined that the circumstances of the offense are not egregious enough by themselves to overcome the presumption of alternative sentencing, we conclude that they are sufficiently reprehensible to deny full probation.

Each sentencing decision necessarily involves a case-by-case analysis from the facts and circumstances presented. Judicial discretion within the sentencing framework is essential to effect a sentence which will serve both the public and the defendant.

Upon *de novo* review and in accord with a presumption of correctness, we are unable to conclude that the trial court erred in determining that the appellant had not met her burden of establishing suitability for full probation.

### E. *Judicial Diversion*

■ The appellant contends that the trial court should have granted her judicial diversion pursuant to Tenn.Code Ann. § 40–35–313. Judicial diversion is not an alternative sentence enumerated in Tenn.Code Ann. § 40–35–104, and the presumption of being a favorable candidate for alternative sentencing does not apply in a judicial diversion analysis. *State v. Anderson,* 857 S.W.2d 571, 573 (Tenn.Crim.App.1992). Whether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court. *Bonestel,* 871 S.W.2d at 168. This court will not interfere with the refusal of the trial court to grant judicial diversion if there is *"any substantial evidence* to support the refusal contained in the record." *Id.* (emphasis supplied). The same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion. *State v. Holland,* 661 S.W.2d 91, 93 (Tenn.Crim.App.1983). Since we have already determined that the

---

**3.** This provision provides that "nothing in this chapter shall be construed as altering any provision of present statutory or case law requiring

that the burden of establishing suitability for probation rests with the defendant."

appellant is not entitled to full probation, we conclude that the trial court did not abuse its discretion in denying the appellant's request for diversion.

### III. *Conclusion*

We conclude that a sentence of split confinement would both serve the ends of justice and fulfill the rehabilitative needs of the appellant. The judgment of conviction is modified as follows: The appellant's sentence is reduced to three years, of which 120 days are to be served in confinement at the local jail or workhouse. The period of confinement is to be followed by three years of supervised probation. In addition, the appellant is ordered to complete an alcohol abuse program and to perform 200 hours of community service. The appellant's Tennessee driver's license is revoked for a period of three years pursuant to Tenn.Code Ann. § 39–13–213(c). This case is remanded for entry of a judgment consistent with this opinion.

SCOTT and WHITE, JJ., concur.