# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 23, 2002 Session

## STATE OF TENNESSEE v. GABOR PALASTI

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 232185     Douglas A. Meyer, Judge**

---

**No. E2001-01642-CCA-R3-CD**
**April 10, 2003**

---

The defendant, Gabor Palasti, was convicted upon his pleas of guilty to the charges of vehicular assault and three counts of reckless endangerment. He originally received a four year effective sentence with 11 months, 29 days of incarceration followed by probation. This was ultimately altered by the trial judge to require that the defendant serve six (6) months in confinement with thirty days of continuous confinement followed by five months of work release and then supervised probation. In this appeal the defendant contends he should have received full probation for these offenses and he cites numerous alleged deficiencies in the trial court's sentencing procedures. We find that in sentencing the defendant the trial court failed to make appropriate findings on the record and that therefore our review of the defendant's sentence is <u>de novo</u> without a presumption of correctness. Nevertheless, we find that the record contains sufficient evidence from which this Court concludes that six (6) months confinement of the defendant is appropriate. However, we believe the entire confinement should be served on work release. We therefore AFFIRM the decision of the trial court with the modification that the entire period of incarceration be served on work release.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed as Modified.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

William L. Brown and Travis R. McDonough, Chattanooga, Tennessee, for appellant, Gabor Palasti.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; Bill Cox, District Attorney General; and Thomas E. Kimball, Assistant District Attorney General for appellee, State of Tennessee.

# OPINION

## Factual Background

In September of 1999 the City of Chattanooga held a festival called Wine Over Water. The defendant, his wife and some friends attended the festival. While at the festival the defendant purchased two glasses for $50.00. This entitled he and his wife to sample wine from 384 vendors. After sampling several of the offered wines the defendant became intoxicated.

An acquaintance at the festival invited the defendant to sit on a golf car and rest. The cart started and the defendant, who did not know how to operate the vehicle, ran the cart through three or four tables injuring four bystanders. As a result of this incident the defendant pled guilty to one count of vehicular assault and three counts of reckless endangerment.[1]

At the original sentencing hearing on June 11, 2001, the defendant testified that he is a Hungarian immigrant who came to the United States in 1972. He moved to Chattanooga in 1974 and in 1976 he went to work for Olan Mills. He maintained that his actions were unintentional and that the incident would stay with him financially and emotionally for the rest of his life.[2] He acknowledged that his actions were wrong and he apologized to the victims who were injured.

In addition to the defendant, Ms. Inez Millwood, the defendant's supervisor at Olan Mills, testified that the defendant was a good employee. He had worked at Olan Mills for over 25 years and had never been a problem.

Following this hearing the trial court sentenced the defendant to a terms of four years. He was to serve 11 months, 29 days incarceration with the remainder of his sentence on supervised probation.

On June 26, 2001, the defendant filed a motion for the trial court to reconsider the sentence. He specifically asked that the trial court drop any requirement of actual incarceration. On October 29, 2001, a hearing was held on this motion.

At the October 29 hearing Kristie Jackson, one of the victims in the case, testified that she and her husband were working a booth at the wine festival when she heard her husband suddenly shout. When she turned she saw the defendant and the golf cart coming at her. Ms. Jackson indicated that moments earlier she had observed the defendant start the cart and plow through some tables. She stated that the defendant was smiling the entire time. The defendant knocked down a friend of Ms. Jackson and pushed both her and the friend against the side of a bridge. Ms. Jackson

---

[1]The defendant was originally also charged with D.U.I., but the State dismissed that charge as part of the plea agreement.

[2]The victims in the case sued Mr. Palasti for damages arising out of the incident.

heard her chest pop. She was then dragged to the center of the bridge because her shoe had become attached to the cart's axle. The defendant then knocked down two other festival goers on the other side of the bridge.

Although x-rays showed Ms. Jackson's back was normal, she stated that as a result of her injuries she suffered five damaged disks in her back, could no longer drive without pain nor sit for extended periods. She had a great deal of difficulty getting comfortable. Her business lost $1865 in merchandise and other damage.

The defendant again testified in his own behalf. He stated that except for a parking ticket in 1975 or 1976, he had never been in trouble. He denied that he was laughing during the incident but was rather panicked when the cart began to move. He testified he could not remember what happened after the cart began to move. Mr. Palasti told the court that if forced to go to jail, he would lose his job and would not be able to pay damages or restitution to the victims.

The defendant's wife Suzanne Palasti, testified that the defendant is a good man, a good husband, and her sole source of support. She cannot drive nor operate office equipment. She indicated that the defendant had expressed great remorse about the incident.

The defendant's employer, Olan Mills, II, testified that the defendant was an exemplary employee and an honest person. If the defendant were sent to jail for more than three days under company policy he would be forced to discharge the defendant from employment. Mr. Mills offered to assist in any way he could to help the defendant in abiding by any requirements of an alternative sentence.

Following this hearing the trial court found that in order to avoid depreciating the seriousness of the offense and to provide an effective deterrence to others likely to commit similar offenses, the defendant should serve 30 days in actual continuous confinement, followed by five months of work release and the remainder of the four year sentence on supervised probation. From this sentence the defendant brings the instant appeal asking this Court to grant him full probation.

Standard of Review

When determining a defendant's specific sentence or the appropriate combination of sentencing alternatives that should be imposed on a defendant, a court must consider a variety of factors including: evidence presented at the sentencing hearing; the presentence report; the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the offense; statements made by the offender; as well as, evidence and information offered by the parties on the enhancement and mitigating factors in Tenn. Code Ann. §§ 40-35-113 and 40-35-114. Tenn. Code Ann. § 40-35-210. When a court does consider each of the required factors in determining a sentence and amply notes its findings on the record, review of that sentence is de novo with a presumption that the court's determinations are correct. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In addition, sentences involving confinement should be based on three primary considerations: 1) that confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; 2) that confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others; or 3) that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1).

A defendant who is a standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing including probation. Tenn. Code Ann. § 40-35-102(6). However, the burden of establishing suitability for probation lies with the defendant. Tenn. Code Ann. § 40-35-303(b). On appeal, a defendant seeking full probation bears the burden of showing that the sentence imposed is improper and that full probation will be in the best interests of both the defendant and the public. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim App. 1995).

In the instant case the defendant asserts that the trial court failed to make the required findings of fact on the record so as to accord the sentence in this case the presumption of correctness prescribed by Tennessee Code Annotated section 40-35-401(d). The State concedes that the record is bereft of such findings, but maintains that the record is sufficient to uphold a sentence involving 30 days confinement. Given the state of the record we agree that we should review the sentence de novo on the record without the presumption of correctness.

The defendant is presumptively entitled to some form of alternative sentencing. Tenn. Code Ann. § 40-35-102(6). However, the defendant still maintains the burden of showing his suitability for full probation. Bingham, 910 S.W.2d at 456. We are unpersuaded that full probation is warranted in this case.

Due to his apparent extreme intoxication the defendant caused rather serious injuries to at least one of the victim in this case and minor injuries to others. In addition, he caused at least two of the victims to suffer financial loss. Moreover, he placed a number of people at great risk of injury through his actions at what should have been a peaceful and safe community event. We agree with the trial judge that a denial of complete probation is necessary to avoid depreciating the seriousness of the offenses. In addition, from this record it appears that this case received extensive publicity in the community. Such a consideration is appropriate when sending a deterrent message to potential future lawbreakers of a similar nature that such conduct will not be tolerated. See, Tenn. Code Ann. § 40-35-103(1)(B); State v. Hooper, 29 S.W.2d 1, 11 (Tenn. 2001).

However, the defendant is in otherwise admirable person with an excellent work history and a great potential for rehabilitation. He is 57 years old, is partially disabled, has worked steadily with the same company for over 26 years and is the sole supporter of his wife. It appears from the record, and the trial judge apparently believes, that the defendant is genuinely remorseful for his actions. Testimony at the second sentencing hearing clearly established that should the defendant be required to miss more than three days of work because of his incarceration he will lose his long time

employment. Given, these factors we are of the opinion that the trial court's requirement of thirty days continuous confinement is not in the best interests of the defendant, the community, nor the victims, who presumably want to be paid the restitution ordered by the trial court and any other civil damages they may recover. Consequently, we believe the sentence should be modified to require the original six months incarceration to be served entirely on work release followed by the period of supervised probation ordered by the trial court. We are hopeful that such a modification will allow the defendant to maintain his employment and fulfill his financial obligations while sending a message to both he and the community that behavior such as that exhibited in this case will not be treated lightly.

Accordingly, the judgment of the trial court is affirmed as modified and the case is remanded to the Criminal Court of Hamilton County for entry of judgment in accordance with this opinion and the collection of costs.

_____
JERRY L. SMITH, JUDGE